ON REHEARING
PER CURIAM.
This note is in answer to defendants’-appellants’ application for a rehearing. We have again considered very carefully the errors cited by appellants and are further convinced that our original opinion should stand but that some further explanation may be helpful.
At the outset we state that in considering our main opinion, the reader must bear in mind several salient facts. The first is that the sole question before the court deals with the determination of the parties’ rights under not one but two leases. The lease sought to be cancelled is the Proctor lease and it pertained to Lot C, located in the NW 1/4 of Section 33, and designated as drilling unit “SU-F”. The second lease is composed of Lot E, located in the SW 1/4 of Section 33, and designated as drilling unit “SU-K”, and is referred to as the Gottlieb lease. Both of these lots are shown on a plat of survey dated April 26, 1964 by James R. Joffrion. This plat is attached to both leases. It shows both lots as having a depth of 2640 feet or 40 chains. The Proctor lease was executed on May 19, 1965. The Gottlieb lease was executed on May 16, 1961. At the time plaintiffs asked for the cancellation of the Proctor lease, the lessors and the lessees under both leases were the same parties.
It must also be borne in mind that the evidence clearly shows that the Commissioner’s order divided Section 33 (among others) into four drilling units with each drilling unit being equal and corresponding to a quarter section.
When Mr. Spikes made his survey and prepared “Sun Oil Company Exhibit G-5” he found according to his measurements that the western boundaries of Sections 33 and 40 were short and would not permit the assignment to each quarter section a depth of 2640 feet or 40 chains. He therefore pro-rated the shortage between the two sections and assigned to each quarter section a depth on their western boundaries of 2618.33 feet. This is the plat that was accepted by the Commissioner of Conservation and made a part of his order. Thus we can see that there is a difference in depth in each quarter section (SU-F and SU-K) and Lot C and Lot E of 21.27 feet because Lots C and E called for depths of 2640 feet.
Now in our judgment and as we stated in our original opinion, defendants have taken up this slack by shorting Lot E while giving to Lot C its full measurement of 2640 feet. This also causes the southern line of Lot C to fall into the SW 1/4 of Section 33 or drilling unit SU-K.
This is what we have held defendants cannot do. If the quarter section line is the boundary line between Lots C and E as their titles clearly indicate, defendants cannot ignore the measurements of Lot E which also calls for a depth of 2640 feet. If defendants would accord to Lot E its full measurement we would find that the northern line of this lot would extend into' *23 the NW 1/4 of Section 33, contrary to its title.
Defendants as the lessees of both of these tracts are just as hound by the title of plaintiff as is the plaintiff herself.
The Gottlieb lease was executed first. It appears to us that its provisions should be given effect equal to that of the Proctor lease which would place the dividing line between these two tracts on the quarter section line.
When we made reference to “failure of title” in our main opinion, we were referring to the provision in both leases which gives the lessor the right to adjust interior measurements of a drilling unit so that the lessor will not pay royalties for more land than it has leased. On defendants’ exhibit (D-14) which was prepared to accompany “Oil and Gas Division Order No. 9561” prepared by Mr. Spikes, defendants’ surveyor, we note that Lot E is designated as Tract K-3 (70.77 acres); whereas, the Gottlieb lease and the Joffrion survey called for Lot E to contain 75.39 acres. Thus it is clear to us exactly what defendants have done. They have reduced the size of Lot E as shown on the Joffrion map by 4.62 acres and do not permit the northern boundary of Lot E to conform to the quarter section line as required by its title.
In defendants’ application for rehearing they have stated that we have gone de hors the record in making reference to the Barnes and Hawkins tracts. We obtained our information concerning the Barnes and Hawkins leases from data contained on defendants’ exhibit D-14.
In summary, we say that under the circumstances of this case the defendants are required to give equal weight to both the Proctor and Gottlieb leases. Accordingly, they are bound to comply with the request of plaintiff for the cancellation from the public records of the Proctor lease because none of the lands contained in this lease fell within a drilling unit because the leases involved clearly show that the boundary line between these two contiguous tracts is the quarter section line. These facts were known to the defendants when the request for cancellation of the Proctor lease was made. To consider only one lease (and that the second lease) and ignore the other lease (the first lease) would actually permit the juggling of boundary lines.
We reiterate that in our original opinion we did not change the size of a drilling unit as prescribed by the Commissioner of Conservation. It is for this particular reason that we do not consider the Commissioner an indispensable party. Neither have we changed or varied the boundary lines between any other owners of lands located in the respective drilling units.
For these reasons the application for rehearing is denied.